## ATTACHMENT B

## AFFIDAVIT
## of
## Drug Enforcement Administration Task Force Officer Jason R. Carter

I, Jason R. Carter, being first duly sworn, do hereby depose and state that:

1. I have been a law enforcement officer for over seven years. I am currently assigned to the Springfield, Missouri, Police Department (SPD) Narcotic Enforcement Team (NET) as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I have been assigned to NET for a year and a half. I have attended schools and seminars related to the fields of crime scene investigation and narcotics investigation.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and I am empowered by law to conduct investigations and to make arrests and seizures for offenses enumerated in the Controlled Substances Act, Title 21, United States Code.

3. I have received specialized training and attended seminars relating to the manufacture, distribution, and possession with the intent to distribute controlled substances. From my training and field experience, I have knowledge of complex illegal drug distribution and manufacturing organizations.

4. I have participated in the investigation of the offense set forth herein. As a result of my personal participation in this investigation, review and analysis of reports provided to me by other law enforcement agents and officers, and on the basis of other information I have received, I am familiar with the facts and circumstances surrounding this

1

investigation. Because this affidavit is made for the limited purpose of showing that probable cause exists that the crime alleged has been committed, not all facts known to me about this investigation are included in this affidavit.

5. On October 11, 2017, I received information that William F. JONES (DOB: 09/21/1975) would be travelling to the Kansas City, Missouri, area in order to obtain a load of methamphetamine for re-distribution in the Southwest Missouri area. Agents of the DEA's Springfield, Missouri, Resident Office established surveillance of JONES' residence, located at 9 Crestview Lane, Fair Grove, Dallas County, in the Western District of Missouri. Based on past surveillance, 9 Crestview Lane is JONES' full-time residence.

6. Surveillance has also shown that Jeffery K. WOOSLEY (DOB: 02/14/1985) also stays at a home near JONES in Dallas County in the Western District of Missouri.

7. At approximately 9:28 p.m. that same evening, JONES left his residence in a black Volkswagen sedan, and traveled to the Kansas City, Missouri, area. He was accompanied by a female.

8. Agents maintained surveillance of JONES' movements while in the Kansas City, Missouri, area, and observed him meeting with WOOSLEY on several occasions between October 12, 2017, and October 15, 2017.

9. On the evening of October 14, 2017, Justin L. RHOADS (DOB: 02/28/88) arrived at the Embassy Suites hotel in Overland Park, Kansas, in a white Chevrolet S-10 truck bearing Missouri license plate 4UY 418. Agents watched as RHOADS met with JONES

and WOOSLEY in the parking lot for approximately a half of an hour before JONES and RHOADS walked into the hotel. WOOSLEY left the hotel lot on his motorcycle at that time. Approximately one hour later, RHOADS left the hotel in his truck.

10. The next day, on October 15, 2017, at approximately 6:10 a.m., agents saw WOOSLEY leave the hotel on his motorcycle and drive to a nearby Wal-Mart, located at 11701 Metcalf Avenue, Overland Park, Kansas, where agents observed him go inside the store. Approximately 15 minutes later, WOOSLEY exited the store carrying what appeared to be a small, dark-colored, bag. WOOSLEY secured the bag to his motorcycle in a cargo net and returned to the Embassy Suites hotel. Agents were not able to observe what room that WOOSLEY went into when he returned to the hotel.

11. At approximately 9:00 a.m., agents observed RHOADS return to the hotel parking lot in the same white Chevrolet truck he had driven the day before and waited in his truck. Approximately 10 minutes later, JONES exited the front doors of the hotel carrying a large, black duffel bag. He waved to RHOADS and walked to the black Volkswagen before setting the black duffel bag on the ground next to the Volkswagen. RHOADS moved his truck and parked next to JONES and the Volkswagen, so that the bag was between the Volkswagen and the truck. The two removed a large box from the backseat of the Volkswagen and placed it in the bed of RHOADS' truck. RHOADS then picked up the large black duffel bag and placed it in the cab of the truck, behind the driver's seat. RHOADS and JONES talked for a while in the lot before RHOADS left in his truck with the duffel bag.

12. Agents maintained surveillance of RHOADS as he drove southbound on U.S. Highway 71 out of the Kansas City, Missouri, area. Agents coordinated with the Missouri State Highway Patrol (MSHP), who conducted a traffic stop of RHOADS' truck on Missouri Highway 13, just south of Humansville, Polk County, in the Western District of Missouri.

13. During that stop, troopers conducted a probable cause search of the vehicle based on the intelligence gathered and observations made by myself and other agents. During that search, MSHP Sergeant Gary Braden located the black duffel bag behind RHOADS' driver's seat. The duffel bag still had on it the thin plastic loop left by a store price tag. Inside that bag, Sergeant Braden located 10 Ziploc-style plastic bags that contained a white, crystalline substance consistent with methamphetamine.

14. RHOADS was transported to the MSHP office in Bolivar, Missouri, for processing. I responded to that location and took possession of the duffel bag and its contents.

15. I later weighed the 10 plastic bags and their contents, and found they had a cumulative weight of 21 pounds, a distributive amount of methamphetamine. A field test of the substance in one of the bags showed a positive result for the presence of methamphetamine.

16. On October 23, 2017, I went back to the Kansas City, Missouri, area to conduct additional investigation. I went to the Wal-Mart at 11701 Metcalf Avenue, Overland Park, Kansas. I retrieved surveillance of WOOSLEY arriving there on October 15, 2017,

at approximately 6:20 a.m. I also retrieved the record of WOOSLEY's purchase. That record showed that WOOSLEY had purchased an item with a particular Universal Product Code (UPC). I went to a part of the store where bags are sold. In that section, I found the bag that matched the color and description of the bag in which the methamphetamine was found in RHOADS' truck. One of the UPC numbers in WOOSLEY's record of purchase showed that he had purchased that item on October 15, 2017.

17. Based on the facts above and my training and experience, I believe that RHOADS was transporting the methamphetamine back to the Springfield, Missouri, area for JONES and WOOSLEY for distribution.

18. Because of a concern that the agents executing the arrest warrants requested in conjunction with this complaint may be endangered if the complaint and arrest warrants are made public or the listed defendants may flee if alerted to their existence, I would also request that the complaint and arrest warrants be sealed until the initial appearance of the first defendant listed in the complaint.

_____
Jason R. Carter
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me in my presence on the 24th day of October, 2017.

_____
DAVID P. RUSH
United States Magistrate Judge

5